**P. FERRERO & C. S.p.A., Plaintiff,**

v.

**LIFE SAVERS, INC., Defendant.**

**No. 74 Civ. 3282.**

United States District Court,
S. D. New York.

Sept. 13, 1974.

Sughrue, Rothwell, Mion, Zinn & Macpeak, Washington, D. C., by G. Franklin Rothwell, Washington, D. C., of counsel, Breed, Abbott & Morgan, New York City by Charles Kadish, Stephen R. Lang, New York City, of counsel, for plaintiff.

Weil, Lee & Bergin, New York City, by Alfred T. Lee, New York City, of counsel, for defendant.

## OPINION

BONSAL, District Judge.

Plaintiff, P. Ferrero & C. S.p.A. ("Ferrero"), instituted this action on July 30, 1974 against defendant, Life Savers, Inc. ("Life Savers"), seeking a preliminary and permanent injunction against Life Savers' alleged trademark infringement and unfair competition. The complaint alleges that Ferrero developed a mini-mint product sold in the United States under the trademark "TIC TAC"; that TIC TAC mints are sold in rectangular-shaped, transparent plastic containers each holding about 40 mints; that the containers are sold from display "trees" designed to stand upright on a check-out counter or near a cash register; that the containers of TIC TAC mints and the display trees from which they are sold have come to be recognized by consumers as identifying Ferrero's mints and distinguishing them from the

mints of others; that Life Savers has introduced its own mini-mint product under the name "MIGHTY MINTS"; and that MIGHTY MINTS are sold in containers and from display trees "likely to confuse or deceive the public and the trade into the mistaken belief that they emanate from the same source or are sponsored by the same entity." The complaint alleges violations of the Lanham Act, 15 U.S.C. § 1114(1) (1963) [1] and 15 U.S.C. § 1125(a) (1974); [2] New York General Business Law § 368–d (McKinney's Consol.Laws, c. 20, 1968),[3] and common law. Jurisdiction is alleged pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a) & (b), and 15 U.S.C. § 1121.

On August 9, 1974 Ferrero moved for a preliminary injunction. A hearing was held on the motion on August 30 and September 3, 1974.

Plaintiff Ferrero is an Italian corporation with its principal offices at Piaz-za Pietro, Alba (Cuneo), Italy. During the years 1965 to 1967, Ferrero developed a new mini-mint product, which has been sold in the United States under the trademark "TIC TAC". Each mint is a small, hard candy of oblong shape and about the size of a shelled peanut. Ferrero also developed a transparent plastic container in which its mints have been sold. The container is of rectangular shape, $2\frac{3}{8}$ inches high, $1\frac{3}{8}$ inches wide, and $\frac{1}{2}$ inch deep, with squared corners. The top of the container is of opaque plastic and is inserted into the container approximately $\frac{3}{8}$ inch. There is an overwrap paper label across the top of the container which extends downward past the opaque plastic top approximately 1 inch. About 40 mints are contained in each TIC TAC container and they are visible through the clear plastic walls. The paper label is green in color with the words "TIC TAC"

1. Section 1114(1) provides:
"(1) Any person who shall, without the consent of the registrant—
(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.
shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) of this section, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive."

2. Section 1125(a) provides:
"(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

3. Section 368–d provides:
"Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

written in prominent white letters on both sides of the container.

During the years 1967 and 1968 Ferrero (with the assistance of another Italian firm) also designed a display tree to hold 50 of its TIC TAC containers. The display tree is made of green plastic with a vertical zigzag member approximately 15½ inches high extending upward from its base. On opposite sides of the vertical member there are slots in the plastic in staggered, intermittent rows into which slots the containers of mints are placed before the tree is shipped to the retailer. The containers extend outward at about 45 degrees from the vertical. At the top of the display tree is a prominent label with the words "TIC TAC".

Ferrero's display tree was acclaimed in Europe and discussed in many articles which appeared in European trade papers. The display tree was awarded an "Oscar" from the European Institute of Point-of-Purchase Advertising in 1968.

In 1970 Ferrero began selling TIC TAC mints in the United States. It has conducted substantial television advertising in which the TIC TAC container and the display tree are prominently featured. Sales in the United States have reached a rate of about 20 million individual containers per month.

In 1973 the Warner-Lambert Company entered the mini-mint field with its product sold under the name "DYNAMINTS". Its container is also clear plastic and of rectangular shape, though it is horizontal rather than vertical. The DYNAMINTS display tree is rectangular and flat in shape rather than being vertical, and its edges are straight rather than having a zigzag pattern. The DYNAMINTS containers are stacked one above the other in slots and are dispensed to consumers using a

"gravity-feed" principle from openings in the lower part of the display.

In June, 1973 Ferrero instituted an action against the Warner-Lambert Company alleging that the DYNAMINTS container infringed its rights. This action is presently pending in the United States District Court for the District of Delaware.

Defendant Life Savers is a Delaware corporation with its principal place of business in New York City. In November, 1973 it decided to enter the mini-mint field with a product called "MIGHTY MINTS". Life Savers' market research studies showed that the general size and shape of the TIC TAC containers had found favor with the public and that it was preferred over the DYNAMINTS container. Life Savers' research also disclosed that retailers preferred the TIC TAC tree because it permitted more efficient use of normally unused vertical display space on a crowded counter, because it was disposable so that the retailer did not have the task of refilling the empty unit, and because it permitted the consumer to take a container of mints from any point on the display, not just from the bottom. Life Savers, however, hoped to improve on the TIC TAC container design by making the container's sides contoured with rounded corners and a tapered lower portion so that it would fit more comfortably into the palm of the hand. Mr. William K. Thiess (Group Product Manager for Life Savers and responsible for the development of MIGHTY MINTS) testified that they modeled the MIGHTY MINTS container after tapered and contoured cigarette lighters which they felt would be pleasing and comfortable to hold in the hand. The MIGHTY MINTS container is 2⅜ inches high, 1½ inches wide at its widest point, and ½ inch deep. It also has a paper label overwrap with the words "MIGHTY MINTS" and an opaque plastic top. MIGHTY MINTS containers, however,

come in three colors, corresponding to the three MIGHTY MINTS flavors: green for spearmint, blue for peppermint, and red for cinnamon.

The MIGHTY MINTS display tree is made of white plastic with straight rows of slots on opposite sides for the MIGHTY MINTS containers, which are positioned at about 45 degrees from the vertical. The MIGHTY MINTS display tree holds 72 containers. Like the TIC TAC tree, it is designed to be discarded by the retailer when empty and replaced by a new fully-loaded tree. At the top of the two side panels, which have a diamond shape rather than a zigzag pattern, there is prominently displayed the trademark "MIGHTY MINTS". Shipments of MIGHTY MINTS began during the week of August 19, 1974.

■ Plaintiff contends that Life Savers' MIGHTY MINTS container and display tree unfairly simulate the TIC TAC container and display tree in design and "trade dress" and that as a result consumers will likely be confused as to the source of the two products.

In Beech-Nut, Inc. v. Warner-Lambert Co., 480 F.2d 801 (2d Cir. 1973), the Court of Appeals reiterated that:

"[t]he award of a preliminary injunction is an extraordinary remedy, and will not be granted except upon a clear showing of probable success and possible irreparable injury. Clairol, Inc. v. The Gillette Co., 389 F.2d 264, 265 (2d Cir. 1968)." 480 F.2d at 803.

The Court of Appeals also stated that:

"[i]n testing for likelihood of confusion in the impulse-purchaser market, a court must disregard minutia of differences and look to the overall appearance of the package as seen by a potential purchaser. [citation omitted]" Id. at 804.

The testimony at the hearing indicated that the design of the TIC TAC tree is well suited for taking advantage of unused vertical air space above a crowded counter; it is light in weight and disposable for ease of handling by the retailer; and it permits high visibility and easy removal of the product by the consumer. Similarly, the TIC TAC container is well suited for protecting the mints from debris, such as lint, tobacco shreds, and dirt that might be found in the pocket where the container is kept. Being made of clear plastic, it is crush resistant and permits the consumer to see how many mints remain in the container. Its flip-top opening is convenient for the removal of one or two mints for use at a time, and its shape makes it comfortable in the hand.

■ The MIGHTY MINTS display tree and container incorporate these functional advantages with, as Life Savers contends, certain improvements on the basic design. However, both the TIC TAC display tree and the MIGHTY MINTS display tree are clearly identified with their respective product names. The TIC TAC tree is green and has a vertical zigzag pattern; the rows of containers are staggered so that rows having three containers alternate with rows having two containers. The MIGHTY MINTS display tree, on the other hand, is white and has straight rows of six containers in each. It holds 72 containers rather than 50 held by a TIC TAC tree. Also, it has a diamond rather than a zigzag vertical pattern.

The individual containers are also clearly identified with the respective product names. The lettering identifying the products is prominently placed on each container and the color schemes are dissimilar. Ferrero has used only one color (green) for its containers, though there was testimony that Ferrero intends to introduce a new flavor in containers with a red motif. Life Savers has used three different colors to designate its three flavors.

 

There was evidence at the hearing that the MIGHTY MINTS containers would fit into the slots in the TIC TAC tree and that the MIGHTY MINTS tree could be placed on top of the TIC TAC tree in such a way that it obscured the tree's TIC TAC label. There was no evidence, however, that Life Savers nor any retailers had engaged in these practices, which—if engaged in—would tend to indicate an attempt to palm off Life Savers' product as coming from Ferrero, and would doubtless cause consumer confusion as to the source of the respective mints.

On the basis of all the evidence introduced at the hearing, and viewing the overall appearances of the two containers and the two display trees as they would be seen by a potential purchaser, the Court concludes that plaintiff Ferrero has not shown that it will probably succeed in this action on the merits. The Court, therefore, finds that Ferrero is not entitled to the extraordinary remedy it seeks, and accordingly, plaintiff Ferrero's motion for a preliminary injunction is denied. However, the order to be entered herein shall contain a provision that Live Savers will send a letter to its sales personnel and to all retailers and dealers engaged in the selling of MIGHTY MINTS that they are not to display any containers of MIGHTY MINTS in TIC TAC trees nor to place any MIGHTY MINTS tree on top of any TIC TAC tree.[4]

The foregoing constitutes the Court's findings of fact and conclusions of law. Rule 52(a), Fed.R.Civ.P.

Settle order on notice.

---

4. A letter in the form suggested by Life Savers, as follows, would be appropriate:

"Please be advised that you are not to display any packs of our Mighty Mints product in a Tic Tac display tree. Additionally, you are not to place any Mighty Mints display trees on top of any Tic Tac tree. These two important directions must be complied with immediately and henceforth, in order to guarantee the individual brand identity of both Mighty Mints and Tic Tac.

"In the unlikely event that the retail trade elects to display Mighty Mints packs in a Tic Tac tree, and/or display a Mighty Mints tree on top of a Tic Tac tree (adjacent to it is fine), please request that this practice be discontinued.

"Although we seriously doubt that these practices have been carried on, we want to insure that they do not occur, so that we may avoid any possible injury to the distinctiveness of both brands."