**MENLEY & JAMES LABORATORIES LTD., Plaintiff,**

v.

**APPROVED PHARMACEUTICAL CORPORATION and Norton S. Putter, Defendants.**

**No. 76–CV–518.**

United States District Court, N. D. New York.

July 29, 1977.

---

Hancock, Estabrook, Ryan, Shove & Hust, Syracuse, N. Y., for plaintiff; William L. Allen, Jr., Syracuse, N. Y., of counsel.

Bond, Schoeneck & King, Syracuse, N. Y., for defendants; James M. Sullivan, Jr., Syracuse, N. Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

This is an action involving alleged trademark and copyright infringement and unfair competition arising out of the defendants' manufacture of Allergy Relief Compound or ARCOMP. Plaintiff has alleged causes of action under §§ 32(1) [1] and 43(a) [2]

---

[1] § 1114. Remedies; infringement; innocent infringement by printers and publishers

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such

use is likely to cause confusion, or to cause mistake, or to deceive.

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) of this section, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

[2] § 1125. False designations of origin and false descriptions forbidden

(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description of representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall

of the Lanham Trade-Mark Act, 15 U.S.C. §§ 1114(1) and 1125(a) respectively, as well as under New York State common law and statutory principles of unfair competition such as those contained in New York General Business Law § 368–d (McKinney's 1968)[3]. Plaintiff has moved for a preliminary injunction to protect its product, Allergy Relief Medicine, or A.R.M., and the corresponding registered trademark and copyrighted printed matter appearing on the packages from infringement and dilution by the defendant. The plaintiff's motion for a preliminary injunction, the terms of which are spelled out in more detail *infra*, is hereby granted. This decision may be considered as the Court's findings of fact and conclusions of law as required by F.R.C.P. Rule 52(a). See also *Small v. Kiley* (2d Cir. 1977, slip op. p. 2221).

Plaintiff herein is a Delaware corporation having its principal place of business in Philadelphia, Pennsylvania. Defendant, Approved Pharmaceutical Corporation (Approved), is a New York corporation with its principal place of business in Syracuse, New York. Defendant Norton S. Putter is a resident of Onondaga County, State of New York, and substantially owns and controls the corporate defendant (Approved).

On or about March 19, 1975, plaintiff began to market nationally a nonprescription drug for the relief of allergy symptoms. The medicine is marketed under the trademark "A.R.M.", a trademark registered with the United States Patent Office on October 15, 1974, under registration number 995,558, and is sold in a cardboard box which measures approximately 5⅝″ × 3¹⁵⁄₁₆″ × ¹³⁄₁₆″. On the box front appears the trademark "A.R.M." in bold white letters, with the phrase "Allergy Relief Medicine" directly thereunder in bold, yellow letters. The background for the front of the box pictures a field, the primary colors being green, yellow, and blue. The box front also contains the phrases "By the Makers of CONTAC" in the upper, left-hand corner, "A NEW WAY TO LIVE WITH YOUR ALLERGY" in the uppermost right-hand corner, and "20 TABLETS" in the lower, right-hand corner. Two explanatory sentences entitled "HAY FEVER/ALLERGY" and "SINUS/ALLERGY" also appear on the front. The sides and back of the box contain various directions and other printed matter. The printed matter appearing on the plaintiff's box is copyrighted under United States Copyright KK244482, issued on August 9, 1976. In the upper, right-hand corner of the front of the box is a circular transparent plastic window which reveals one of the twenty pills contained in the box. The pills are yellow elongated ellipses, approximately ¾″ × ¼″ in size, with "A.R.M." imprinted upon them.

Since it began marketing A.R.M., the plaintiff has spent in excess of $5,000,000 in advertisements and promotions and has realized gross sales of approximately $11,000,000.

Defendant Approved began to market its own product for the relief of allergy symptoms, ARCOMP, in May of 1976. The drug is sold in interstate commerce. ARCOMP is marketed in a cardboard box measuring approximately 5⅝″ × 3¹⁵⁄₁₆″ × ¹³⁄₁₆″, with a picture on the front of the box portraying a field, the primary colors being green and

---

with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

**3.** § 368–d. Injury to business reputation; dilution

Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

yellow. On the front of the box appears "ARCOMP" in bold, white letters, with "ALLERGY RELIEF COMPOUND" in bold, yellow letters directly under it. In the upper, right-hand corner appears the phrase "A BETTER WAY TO LIVE WITH YOUR ALLERGY". Also appearing on the cover in the upper, left-hand corner are the phrases "ARE YOU TORMENTED BY POLLEN, PETS, POLLUTION, DUST?", underneath which are two descriptive sentences entitled "ALLERGY HAY FEVER" and "ALLERGY SINUS", with virtually the same language as those appearing on the A.R.M. box. In the lower, right-hand corner is printed "20 TABLETS". Appearing on the sides and the back of the box are directional and labelling materials. The directions on the back are not arranged like those on the A.R.M. box, but the language is strikingly similar. In the upper, right-hand corner of the box front is a transparent circular plastic window which reveals one of the twenty pills contained inside. The pills are yellow, elongated ellipses measuring approximately $\frac{3}{4}'' \times \frac{1}{4}''$, with nothing imprinted upon them.

## A. JURISDICTION

This Court has jurisdiction to hear the trademark infringement and federal unfair competition claims brought under 15 U.S.C. §§ 1114(1) and 1125(a) respectively, as well as the copyright infringement, pursuant to 28 U.S.C. §§ 1338(a) and 1332. Similarly, the Court has pendent jurisdiction over the state unfair competition cause of action under 28 U.S.C. § 1338(b), *Armstrong Paint and Varnish Works v. Nu-Enamel Corp.,* 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195 (1938), over and above any diversity jurisdiction which might be present under 28 U.S.C. § 1332.

## B. AVAILABILITY OF INJUNCTIVE RELIEF

This Court possesses the equitable power, upon a proper showing, to issue a prelimi-nary injunction, such as that sought by the plaintiff. 15 U.S.C. § 1116, F.R.C.P. Rule 65. The first issue which must be dealt with in this regard is whether or not an evidentiary hearing need be held prior to ruling upon the motion. The Second Circuit Court of Appeals has indicated that, although looked upon with disfavor, a preliminary injunction may, under some circumstances, be granted upon affidavits alone. See, e. g. *Carter-Wallace, Inc. v. Davis-Edward Pharmical Corp.,* 443 F.2d 867, 169 U.S.P.Q. 625 (2d Cir. 1971) cert. den. 412 U.S. 929, 93 S.Ct. 2753, 37 L.Ed.2d 156; *S. E. C. v. Frank,* 388 F.2d 486 (2d Cir. 1968); see also 7 Moore's Federal Practice ¶ 65.04. In *Frank,* Judge Friendly, speaking for the Court, recognized three distinct types of motions for preliminary injunctions: 1) first, those presenting no serious factual disputes, but the issues involved concern the meaning and applicability of a statute or common law rule; 2) the issues as to the raw facts are only slightly in dispute, but as to the inferences to be drawn from them and the application of the law to those inferences and facts, there are questions, and 3) those wherein a sharp dispute exists with regard to facts, and the case hinges upon them. Speaking for the Court, Judge Friendly found that a hearing was an absolute necessity only in the third category of cases. In the first two, the necessity of a hearing turned upon the various factors, including the need for quick protective action, balanced against a desire to act only equitably and with certainty. This Court believes this case to fall under the second of the above-enumerated categories; and, for reasons which will be better enunciated later in this opinion, the Court determines that a hearing is not required to be held.

■ The requirements generally recognized in the courts of this circuit for granting a preliminary injunction are: 1) a showing of probable success on the merits of the underlying controversy, and 2) a likelihood of substantial irreparable harm being suf-

fered by the movant *pendent lite* if the motion is not granted. *Jacobson & Company, Inc. v. Armstrong Cork Co.*, 548 F.2d 438 (2d Cir. 1977); *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247 (2d Cir. 1973). The test is no different in a motion for a preliminary injunction in a case involving trademark infringement and unfair competition; *Beech-Nut, Inc. v. Warner-Lambert Company*, 480 F.2d 801, 178 U.S.P.Q. 385 (2d Cir. 1973); *Hills Bros. Coffee, Inc. v. Hills Super-Markets, Inc.*, 428 F.2d 379, 166 U.S.P.Q. 2 (2d Cir. 1970); *Corning Glass Works v. Jeanette Glass Company*, 308 F.Supp. 1321 (S.D.N.Y. 1970), aff'd 2 Cir., 432 F.2d 784, although the likelihood of irreparable injury can often be presumed in such cases. *Wainright Securities, Inc. v. Wall Street Transcript Corporation*, 558 F.2d 91 (2d Cir. 1977).

## 1. MERITS

■ The relationship between 15 U.S.C. § 1114(1), relating to the trademark infringement, and unfair competition under both 15 U.S.C. § 1125(a) and New York General Business Law § 368–d is a simple one. Trademark infringement is a class within the general subject of unfair competition. Trademark infringement relates to a product's name, whereas unfair competition, in the context now presented, relates to the product as a whole, as it is marketed, and the public's general impression of it. *Corning Glass Works v. Jeanette Glass Company, supra.* The touchstone of both trademark infringement and unfair competition is the likelihood of confusion among prospective purchasers. *Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167 (2d Cir. 1976); *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331, 186 U.S.P.Q. 436 (2d Cir. 1975); *Maternally Yours v. Your Maternity Shop*, 234 F.2d 538, 110 U.S.P.Q. 462 (2d Cir. 1956); *Franklin Mint, Inc. v. Franklin Mint, Ltd.*, 331 F.Supp. 827, 168 U.S.P.Q. 403 (E.D.Pa.1971). The standard is the same under New York's law of unfair competition, except that under New York law, a

trademark need not have acquired a "secondary meaning" or be associated, in the minds of the public, with its producer, in order to be unlawfully infringed. *Flexitized, Inc. v. National Flexitized Corporation*, 335 F.2d 774, 173 U.S.P.Q. 346 (2d Cir. 1964); *Maternally Yours v. Your Maternity Shop, supra.*

■ In determining whether a newcomer's product or trademark has created such a likelihood of consumer confusion as to warrant judicial intervention, a court should consider: 1) the strength of the senior manufacturer's mark; 2) the newcomer's purpose in adopting his mark; 3) the degree of similarity of the two marks; 4) the degree of similarity between the products; 5) the competitive proximity of products; 6) any showing of actual confusion; and 7) the degree of care likely to be exercised by consumers. *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, supra.* In considering these factors, any doubts should be resolved against the newcomer to the industry. *E. I. DuPont de Nemours & Co. v. Yoshida International, Inc.*, 393 F.Supp. 502, 185 U.S.P.Q. 587 (E.D. N.Y.1975).

■ Taking into account the foregoing factors, the Court is of the opinion that plaintiff has demonstrated a very high degree of probability of ultimate success on the causes of action alleged. The facts of this case lead inescapably to the conclusion that the defendant, admittedly a relatively small producer in comparison to the plaintiff, designed his products and marketing devices and techniques with the intention of "cashing in" on plaintiff's reputation, advertising, and established position in the allergy medicine market, a result which cannot be tolerated. *American Chicle Co. v. Topps Chewing Gum*, 208 F.2d 560, 99 U.S.P.Q. 362 (2d Cir. 1953); *E. I. DuPont de Nemours & Co. v. Yoshida International, Inc., supra; Mortellito v. Nina of California, Inc.*, 335 F.Supp. 1288, 173 U.S.P.Q. 346 (S.D.N.Y.1972); *Corning Glass Works v. Jeanette Glass Company, supra.* There are

several factors which lead to this conclusion. First, the size, shape, and color of the pills manufactured by the two parties are virtually identical. The boxes in which they are sold are similar in size and shape, each with a transparent plastic viewing window in the upper, right-hand corner. At a glance, without attempting to inspect closely for minute differences, *Beech-Nut, Inc. v. Warner-Lambert Company, supra,* the boxes are the same in appearance. Also, a comparison of the writings on the two boxes reveals a similarity too extreme to be coincidental. In fact, most of the phrases contain the same language, with some minor juxtaposition;[4] and, those phrases, for the most part, appear in the same location on both parties' boxes. Finally, but importantly, the only place where defendant's name appears as the distributor is on the bottom of the box, and even then, in letters only faintly visible. Taken together with the marked similarity of defendant's chosen product name to plaintiff's registered trademark, which is to be accorded a presumption of validity, 15 U.S.C. § 1115, these factors lead this Court to find a sufficient showing of infringement and unfair competition for the purposes of this motion.

As other courts have found, this obvious attempt to cash in on a senior user's reputation and advertising leads invariably to a conclusion that likelihood of confusion not only exists, but was intended by the newcomer, defendant herein. *American Chicle Co. v. Topps Chewing Gum, supra; Mortellito v. Nina of California, Inc., supra.* The logic of this conclusion is especially convincing when the newcomer is relatively small, and has spent little or nothing at all in promoting its product, as is true in this case. Contrast *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, supra,* with *Beech-Nut, Inc. v. Warner-Lambert Company, supra,* and *P. Ferrero & C. S. p. A. v. Life Savers, Inc.,* 383 F.Supp. 10, 184 U.S.P.Q. 438 (S.D.N.Y.1974). Moreover, while intent to confuse need not be demonstrated to find unfair competition or infringement, the defendant's clear objective, that of cashing in on plaintiff's reputation, is bolstered by review of the defendant's past endeavors in the field of the sales of pharmaceuticals, notably those mentioned in *Grove Laboratories, Inc. v. Approved Pharmaceutical Corp.,* 112 U.S.P.Q. 287 (N.D.N.Y.1957) (Brennan, C. J.),[5] and *Bristol-Myers Company v. Approved Pharmaceutical Corp.,* 149 U.S.P.Q. 896 (N.Y.Co.

---

4. The following is a comparison of some of the language appearing on the two boxes:

A.R.M. (Plaintiff)

HAY FEVER/ALLERGY
Each tablet provides up to 4 hours relief from the sneezing runny nose and itching weepy eyes common to most respiratory allergies.

SINUS/ALLERGY
A.R.M. helps ease breathing clear sinus congestion and reduce postnasal morning mucus buildup. A.R.M. is fast-acting, safe and effective.

ARCOMP (Defendant)

ALLERGY * HAY FEVER
Each tablet is good for up to 4 hours relief from sneezing itching, and runny nose, weepy eyes, common to most respiratory allergies.

ALLERGY * SINUS
This compound helps you breath easier by clearing sinus congestion. It reduces mucuous build up of the post nasal passages. It acts fast, safely and effectively.

---

5. In *Grove Laboratories,* defendant was found to be distributing "7 WAY" cold capsules in such a way as to be infringing upon plaintiff's "4 WAY" cold capsules. An injunction was therefore granted.

Sup.Ct.1966).[6] After reviewing those cases, which are certainly relevant to defendant's motives in this case, Federal Rules of Evidence Rule 404(b), one can only attribute the closeness in every respect of defendant's present product, ARCOMP, to that of the plaintiff's product, A.R.M., to an attempt at milking plaintiff's reputation, and, correspondingly, confusing the consumer. From this motive, this Court finds that confusion is not only likely, but calculated to exist. *American Chicle Co. v. Topps Chewing Gum, supra* at 563; *Mortellito v. Nina of California, Inc., supra* at 1294.

▬ Defendants have attempted to show that, through the use of "shelf-talkers", their objective was, in fact, to point out to the consumers the *difference* between their product and A.R.M., and particularly the difference in price. It is well settled that this, without more, is an allowable business practice, so long as there is no likelihood of confusion as to the source. See *Saxony Products, Inc. v. Guerlain, Inc.,* 513 F.2d 716, 185 U.S.P.Q. 474 (9th Cir. 1975). In this case, the names and boxes are so strikingly similar that, especially when placed near or next to each other on a shelf display, there is bound to be a high likelihood of confusion as to source despite the shelf talker,[7] especially since defendant's name appears nowhere on the face of the ARCOMP box. cf. *Hills Bros. Coffee, Inc. v. Hills Supermarkets, Inc., supra.*

It should be noted that a survey conducted by Dr. Marguerite L. Rittenhouse, at the behest of the plaintiff, revealed the existence of actual confusion among purchasers of defendant's product, ARCOMP, as to who distributes it, and its relationship to A.R.M. Such surveys, while admittedly susceptible to claims of inherent bias and other factors which reduce their probative

value, are nevertheless convincing indexes of actual confusion in cases such as this, and consequently should be admissible in evidence. *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, supra.* As can be ascertained from previous statements herein, this Court does not, however, consider it necessary to rely upon the result of this survey.[8]

## 2. INJURY

▬ Having found it probable that defendant has engaged in a patent attempt to cash in on plaintiff's reputation, market status, and promotional attempts in his sales of ARCOMP, this Court finds no difficulty in holding that plaintiff will suffer irreparable harm *pendent lite* if defendant is not enjoined from further infringement. At the outset, it should be noted that the prime allergy and hay fever season in this region has arrived, thereby undoubtedly increasing the sales volume of various allergy relief products, such as A.R.M. and ARCOMP, to their yearly acmes. The result of this, of course, is to maximize the dilution of plaintiff's trademark and reputation by the presence of ARCOMP on the market. It is precisely this harm which the courts have found deserving of the issuance of a preliminary injunction. *Scarves by Vera, Inc. v. Todo Imports, Ltd.,* 544 F.2d 1167 (2d Cir. 1976); *Hills Bros. Coffee, Inc. v. Hills Supermarkets, Inc., supra; Yale Electric Corporation v. Robertson,* 26 F.2d 972 (2d Cir. 1928); *Louis Rich, Inc. v. Horace W. Longacre, Inc.,* 423 F.Supp. 1327 (E.D.Pa. 1976); *Corning Glass Works v. Jeanette Glass Company, supra.* As was recently stated by the Second Circuit Court of Appeals:

---

**6.** In *Bristol-Myers,* defendant was enjoined from distributing "Extra Strength Pain Reliever", and "Improved Buffered Aspirin", which were found to be infringing upon plaintiff's "Excedrin" and "Bufferin", respectively.

**7.** While this Court does not consider it necessary to address this, plaintiff has presented some proof that the shelf talkers are rarely if ever utilized by retail sellers of ARCOMP.

**8.** Were the Court to consider this evidence, a hearing would likely be required, as the survey would undoubtedly raise material issues of fact. This is, in fact, evidenced by the affidavit submitted by the defendants to refute the validity of the survey evidence.

The harm to Steinway in short is the likelihood (footnote omitted) that potential piano purchasers will think that there is some connection between the Grotrian Steinweg and Steinway pianos (citations omitted).

*Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons, supra* at 1342. In this case, the Court finds a very substantial likelihood that reasonably prudent consumers of allergy relief aids may believe ARCOMP is manufactured or distributed by the plaintiff, and will hence be associated with CONTAC and other of plaintiff's products. This, in essence, is an unlawful appropriation of plaintiff's reputation by the defendant. Plaintiff is therefore entitled to preliminary injunctive relief. *Hills Bros. Coffee, Inc. v. Hills Supermarkets, Inc., supra.*

## C. SCOPE OF RELIEF

■ The scope of an injunction to be issued in a case such as this, as with any injunction, lies within the discretion of the court, and should be granted only on such terms as are reasonable and equitable to all concerned. 15 U.S.C. § 1116; *Frostie Company v. Dr. Pepper Company*, 361 F.2d 124 (5th Cir. 1966). The injunction should be tailored so as to protect the plaintiff's registered trademark, copyrighted packaging material, and other legitimate concerns, yet should not be oppressive or unduly burdensome to the defendants. *Berghoff Restaurant Co. v. Lewis W. Berghoff, Inc.*, 499 F.2d 1183, 183 U.S.P.Q. 77 (7th Cir. 1974); *Liberty Mutual Insurance Co. v. Liberty Ins. Co. of Tex.*, 185 F.Supp. 895, 127 U.S. P.Q. 312 (E.D.Ark., W.D.1960). Accordingly, this Court orders that the defendants, their officers, directors, agents, employees, successors and assigns, and all persons acting under their direction and control, be enjoined from the following conduct:

1) Making use of plaintiff's registered trademark, A.R.M., or any confusingly similar imitation thereof, including, but not limited to ARCOMP in connection with the advertising, offering for sale, or sale of any pharmaceutical product for the relief of allergy symptoms;

2) Utilizing a package which is identical to or confusingly similar to plaintiff's package for A.R.M. in conjunction with the advertising, offering for sale, or sale of any pharmaceutical product for the relief of allergy symptoms;

3) Infringing, in any manner, the plaintiff's copyrighted matter protected under Certificate Number KK244482;

4) Marketing any pharmaceutical product for the relief of allergy symptoms in such a manner as to cause a reasonable likelihood that ordinarily prudent consumers will mistakenly attribute the product to the plaintiff.

## III. CONCLUSIONS OF LAW

The plaintiff has demonstrated with reasonable certainty that defendants, in marketing its product ARCOMP, have infringed upon its registered trademark, A.R.M., and its copyrighted package material, and that defendants have engaged in unfair competition under Section 43(a) of the Lanham Trade-Mark Act, 15 U.S.C. § 1125(a), and the New York General Business Law § 368–d and its common law companion principles. Moreover, the plaintiff has demonstrated that, should these practices continue, it will suffer irreparable harm to its reputation and good will, and that its trademark and reputation will be unlawfully diluted.

It is hereby ordered that a preliminary injunction should issue in accordance with the terms and conditions set forth in this opinion.