POLYGLYCOAT CORPORATION,
Plaintiff,

v.

ENVIRONMENTAL CHEMICALS,
INC., Defendant.

No. 80 Civ. 6435 (RWS).

United States District Court,
S. D. New York.

Dec. 22, 1980.

Daniel Rosen, New York City, for plaintiff; David K. Fiveson, Tarrytown, N. Y., of counsel.

Mattson, Madden & Polito, Newark, N. J., for defendant; Edward G. Madden, Newark, N. J., Gary H. Untracht, East Brunswick, N. J., of counsel.

## OPINION

SWEET, District Judge.

This is an action for alleged trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114, 1125, as well as trademark dilution under state law,[1] arising out of the marketing and advertisement by defendant Environmental Chemicals, Inc. of an automotive silicone paint finish remover called POLYCRACKER. Plaintiff Polyglycoat Corporation manufactures and sells, among other things, the leading polymer silicone paint finish trademarked POLYGLYCOAT. On this motion for a preliminary injunction pursuant to Fed.R.Civ.P. 65 plaintiff challenges only the appropriation of the POLYGLYCOAT mark on the POLYCRACKER label and in advertisements therefor. The motion came on for argument on November 14, 1980. On the basis of the findings of fact and conclusions of law which follow, the motion is granted in part and denied in part.[2]

Plaintiff is in the business of manufacturing and selling a protective paint finish sealant for automobiles, a variety of other automotive car products, a textile protection product and a vinyl protection product, all under the tradename POLYGLYCOAT. The trademark POLYGLYCOAT is registered with the United States Patent Office by plaintiff for "protective coating and sealant for automotive finishes."[3] In 1979, sales of POLYGLYCOAT paint finish sealant were approximately $50 million, about half of the company's total sales. POLYGLYCOAT, is carried, for the most part, by new car dealers and is applied to new cars by the dealer as an extra at the request of the customer. The product is advertised extensively in all media both to dealers and car consumers, with most advertising aimed at the latter group. The company's advertising budget for 1979 was approximately $7 million. POLYGLYCOAT is said to be the pioneer auto paint finish sealant and the leader among the 40–50 "poly" sealants on the market, with a reputation for high quality. It is guaranteed as a protective coating against weather-induced deterioration and reportedly can be removed at auto body repair shops only with difficulty.

Defendant recently developed POLYCRACKER, allegedly to fill a need for a product that can easily remove POLYGLYCOAT and similar sealants in preparation for auto body repair and refinishing work. Defendant inaugurated its marketing campaign with a two-page advertisement (appended to the opinion) in the October, 1980 edition of Auto Body Repair News, a trade journal. POLYCRACKER has since been distributed to auto body repair shops throughout the country. The words "Polyglycoat ™ Remover" appear conspicuously on the POLYCRACKER label, one page of the ad consists solely of the bold-lettered statement "WIPE AWAY POLYGLYCOAT ™", and the body of the ad contains such statements as "There's nothing more troublesome for auto body shops than silicone finishes like Polyglycoat" and "Take off Polyglycoat with the wipe of a cloth." As of the date of argument defendant claims to have manufactured $180,000 worth of POLYCRACKER and sold $35,000 worth (valued at defendant's own cost). POLYCRACKER is being manufactured and sold without license from or the consent of plaintiff. Plaintiff does not at present manufacture an auto paint finish sealant remover.

Plaintiff alleges that defendant's use of the POLYGLYCOAT mark in the POLY-

---

1. New York General Business Law § 368–d.

2. The court concludes that this is an appropriate case in which to enter an injunction without a hearing. *See, e. g. Menley & James Laboratories, Ltd. v. Approved Pharmaceutical Corp.,* 438 F.Supp. 1061 (N.D.N.Y.1977).

3. Plaintiff registered POLYGLYCOAT with the United States Patent Office in 1975, registration number 1,018,350. There is no dispute as to the existence of the registration.

CRACKER label and advertisements is likely to "confuse the consumer public into believing that said consumers are purchasing and/or obtaining a product marketed and sold by plaintiff and associated with plaintiff's POLYGLYCOAT trademark" and to "dilute the . . . strength of the POLYGLYCOAT trademark which has been extensively advertised worldwide and which has become associated with plaintiff's high quality automotive care products."[4] Defendant claims that the promotion of POLYCRACKER causes no confusion since it is a complementary, not a competing, product, and since it is being marketed for use exclusively in the auto body repair business and advertised in an appropriate trade journal. Additionally defendant asserts that despite the existence of the POLYGLYCOAT trademark, the word has become the generic term in auto body repair circles for all polymer silicone paint finish sealants.

The standard governing motions for a preliminary injunction in this circuit was restated in *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 206–07 (2d Cir. 1979) ("*Cheerleaders*"):

A preliminary injunction is proper where the plaintiff establishes his possible irreparable harm and either (1) probable success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in movant's favor.

See also *Carey v. Klutznik*, 637 F.2d 834, at 838 (2d Cir. 1980); *Playboy Enterprises v. Chuckleberry Publishing, Inc.*, 486 F.Supp. 414 (S.D.N.Y.1980) ("*Playboy*").

■ Likelihood of success on the merits of a claim such as plaintiff's here depends on "the likelihood that the plaintiff's mark is valid, is worthy of protection, and is being infringed by the defendant." *W. E. Bassett Co. v. Revlon, Inc.*, 354 F.2d 868, 871 (2d Cir. 1966). There is no dispute as to the valid registration of the mark. *See*

note *3, supra*, and *Playboy, supra*, at 419. The likelihood of public confusion within the meaning of 15 U.S.C. §§ 1114 and 1125 then determines whether the POLYGLYCOAT mark is worthy of protection and is being infringed. Confusion would occur if consumers were led to believe that plaintiff actually manufactured POLYCRACKER or otherwise sponsored or approved it, or if defendant gained unfair economic advantage from use of the mark. *See Cheerleaders, supra*, 204–05; *Playboy, supra.*

■ A variety of factors is to be considered in determining whether such confusion is likely to result from defendant's conduct, including the strength of plaintiff's mark, the degree of similarity between plaintiff's mark and the allegedly infringing usage, the degree of similarity between the products, the purpose of defendant in using the mark, and evidence of confusion. *See Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.)*, 544 F.2d 1167, 1173 (2d Cir. 1976); *Playboy, supra.*

At this stage it is difficult to precisely evaluate the strength, or distinctiveness, of the POLYGLYCOAT mark, but from the unchallenged factual assertions in the affidavits of plaintiff's general counsel, as well as other evidence before the court, it must be concluded that the mark is more than merely descriptive—having a high degree of actual recognition among the consuming public. *See e. g. Playboy, supra*, at 419–20. While defendant asserts that the mark has already become a generic in the auto body repair trade and so is not worthy of protection, there has been no such demonstration thus far. *See Selchow & Righter Co. v. McGraw Hill Book Co.*, 580 F.2d 25, 28 (2d Cir. 1978).

Here defendant's use of the name POLYCRACKER is not in issue. Plaintiff is challenging the use of the exact POLYGLYCOAT mark on the POLYCRACKER label and ads. Therefore, no discussion of similarity of marks is necessary. The identity

---

4. Specifically, plaintiff seeks to enjoin defendant from:

using the term POLYGLYCOAT or POLYGLYCOAT REMOVER or any other term con-

fusingly similar to POLYGLYCOAT in connection with the advertising or sale of automotive care products or similar goods which are not of plaintiff's manufacture.

of plaintiff's mark with the allegedly infringing use of course weighs heavily toward a finding of infringement.

While POLYGLYCOAT and POLYCRACKER are non-competing products, they are sufficiently related that consumers are likely to confuse the source of origin. *Scarves by Vera, supra*, at 1172–73. Defendant stresses not only that the products are complementary, but that their markets differ. However, it is not accurate simply to characterize the products as polar opposites. In fact they are closely related members of the family of auto care products to which plaintiff's products largely belong; it appears that the markets for POLYGLYCOAT and POLYCRACKER intersect at least at new car dealerships, the bulk of which have body repair shops. Therefore, plaintiff would be entitled to protection against defendant's use of the POLYGLYCOAT mark whether or not there is a substantial likelihood that plaintiff will itself seek to enter the sealant remover market. *Id.* at 1172–74; *L. E. Waterman Co. v. Gordon*, 72 F.2d 272, 273 (2d Cir. 1934) (Hand, J.).[5]

There are no specific allegations on the record at this stage concerning defendant's intent in utilizing plaintiff's mark. Defendant, however, does not dispute the obvious proposition that its conspicuous referencing of POLYCRACKER as an effective antidote to POLYGLYCOAT and not simply to "polymer silicone finishes," is designed to capitalize on the popularity of the POLYGLYCOAT mark and product in the field. *See Playboy, supra*, at 428–29; *see also Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.*, 411 F.2d 1097, 1101 (2d Cir. 1969), *cert. dismissed*, 396 U.S. 1054, 90 S.Ct. 707, 24 L.Ed.2d 698 (1970).

■ There is no showing of actual consumer confusion on the record; however, such is not necessary in a trademark infringement case. Evidence of the likelihood of public confusion can be and is gleaned from an evaluation of the factors recounted above, and others. *See Scarves by Vera, supra*, at 1174–75; *Kiki Undies, supra*. Here, a reasonable likelihood of confusion is inferred from defendant's use of plaintiff's exact trademark to promote its related product, the absence of a viable alternative explanation by defendant for its appropriation of the POLYGLYCOAT mark, and other circumstances of the relevant market.

■ In any event there is certainly enough evidence of likely confusion to raise substantial questions going to the merits constituting a fair ground for litigation. *See Selchow & Righter Co. v. McGraw Hill Book Co.*, 439 F.Supp. 243, 247 (S.D.N.Y. 1977), *aff'd*, 580 F.2d 25 (2d Cir. 1978). The second portion of this prong of the standard for the grant of a preliminary injunction—the balance of hardships tipping decidedly in favor of the plaintiff—would also be satisfied here. In this regard, the monetary burden and other inconveniences thrust upon defendant by an injunction do not weigh heavily as against the potential damage to plaintiff's intangible assets, such as reputation and goodwill, associated with the allegedly infringed trademark. *See Selchow & Righter Co. v. McGraw Hill Book Co., supra*, at 434. Similarly, the possibility of irreparable harm is established by the showing with respect to the likelihood of public confusion and the practically incalculable attendant damage potentially visited on plaintiff thereby, *Selchow & Righter, supra*, 580 F.2d at 28; *Playboy, supra*, at 429, as well as the real danger that defendant's unfettered use of the POLYGLYCOAT mark will cause it to be so diluted as to render it generic and thereafter unprotectable. *Selchow & Righter Co. v. McGraw Hill Book Co., supra*, at 27; *King-Seeley Thermos Co. v. Aladdin Industries, Inc.*, 321 F.2d 577 (2d Cir. 1963).[6]

---

**5.** Defendant urges as well that any likelihood of confusion is neutralized by clear identification of Environmental Chemicals, Inc. as the manufacturer on the POLYCRACKER label and advertisements. This argument is not convincing, as the trademark POLYGLYCOAT has value to plaintiff regardless of consumers' knowledge as to the name of the company which holds it.

**6.** In fact, even if plaintiff had not established a

Having found that plaintiff is entitled to a preliminary injunction, the court must draw it to fit the rather unique circumstances of this case. Because of the dangers of confusion and trademark dilution, defendant is enjoined from reproducing the POLYGLYCOAT mark on the POLY-CRACKER label either as it now appears, or any other way by which the mark is singled out as the generic, shorthand term standing for the species of paint finish sealants which POLYCRACKER is said to remove. Similarly, defendant is enjoined from singling out the mark in its advertisements, promotional and any other material—as in, for example, the phrases "WIPE AWAY POLYGLYCOAT," "Take off Polyglycoat," "normal prep solvents . . . do not remove polyglycoat," "The Polyglycoat wipes off easily," and "say good-bye to Polyglycoat problems."

On the other hand, in the absence of any showing by plaintiff that defendant's claims for POLYCRACKER are false or misleading under 15 U.S.C. § 1125(a), *compare American Home Products Corp. v. Johnson & Johnson,* 577 F.2d 160, 165 (2d Cir. 1978), there is no justification for injunctive relief beyond that necessary to protect plaintiff against confusion as to the product's source and dilution. Specifically, defendant may not be barred, *per se,* from making the presumably truthful claim (or puff, as the case may be) that POLY-CRACKER is intended to and does easily remove automotive silicone finishes including POLYGLYCOAT, the most popular and perhaps the most durable brand. *See Volkswagenwerk Aktiengesellschaft v.*

likelihood of confusion, injunctive relief might well be appropriate on the trademark dilution claim alone under New York General Business

*Church,* 411 F.2d 350 (9th Cir. 1969); *American Safety Razor Corp. v. International Safety Razor Corp.,* 26 F.2d 108 (D.N.J. 1928), *reversed on other grounds,* 34 F.2d 445 (3rd Cir. 1929). *See also Saxony Products, Inc. v. Guerlain Inc.,* 513 F.2d 716, 722 (9th Cir. 1975); *National Football League v. Governor of State of Delaware,* 435 F.Supp. 1372, 1380 (D.Del.1977); *Menley & James Laboratories, Ltd. v. Approved Pharmaceuticals Corp.,* 438 F.Supp. 1061, 1068 (N.D.N.Y.1977).

Therefore while defendant is enjoined from using the POLYGLYCOAT mark alone on the POLYCRACKER label, advertisements, promotional or other material, defendant may continue making reference to the name in such conjunctive phrases as "silicone finishes like Polyglycoat ʀ." In any such use, the mark must not appear in letters which distinguish it from the other words in the conjunctive phrase by size, color, typeface or any other characteristic. Additionally, all labels, advertisements and promotional materials which contain the POLYGLYCOAT mark shall include the following statement:

POLYGLYCOAT ʀ is a registered trademark of the Polyglycoat Corporation, Scarsdale, New York, for its protective coating and sealant for automotive finishes. The term Polyglycoat as used herein means the product manufactured and sold by that company, and is used without the permission of Polyglycoat Corporation. POLYCRACKER is neither manufactured nor in any way sponsored or authorized by Polyglycoat Corporation.

IT IS SO ORDERED.

Law § 368–d. *See Cheerleaders, supra,* at 205 n.8; *Selchow & Righter Co. v. McGraw Hill Book Co., supra,* 439 F.Supp. at 246.

WIPE
AWAY
POLY-
GLYCOAT™

42

## Introducing

# POLYCRACKER®

## The prep wash that is guaranteed to remove silicone finishes with ease.

There's nothing more troublesome for auto body shops than silicone finishes like Polyglycoat. Up until now silicone finishes have been next to impossible to get off short of stripping the paint right down to metal. But no more. Because now you have Polycracker, a remarkable new prep wash that removes silicone finishes easily.

**Take off Polyglycoat with the wipe of a cloth.**
Unlike normal prep solvents which do not remove polyglycoat, Polycracker breaks the strong chemical bond which links the polymer silicone to the auto paint finish. The Polyglycoat wipes off easily, along with all other greases, waxes, atmospheric pollutants and other residues. One simple application of Polycracker, a quick wipe, and the auto surface is ready for painting. There's no need for additional solvents.

**Take your time.**
Application of Polycracker is simplified further because the product is not petroleum-based. Polycracker does not need to be wiped off quickly because there are no oils to adhere to the surface to be repainted.

**Environmentally Safe.**
Additionally, Polycracker contains no halogens or acids, no sulfides, no ingredients which weaken metals and no phosphorous elements harmful to the environment. Polycracker is bio-degradable, leaves no residue, emits no noxious odor, is nonflammable and safe to use.

**And economical, too.**
Most remarkably, Polycracker is economical. Polycracker is available in a handy Auto Body Shop Six Pack which includes 32 oz. plastic bottles of full strength Polycracker and a separate applicator bottle with a handy spray top.
So say good-bye to Polyglycoat problems and say hello to Polycracker. The only prep wash you'll ever need.

Environmental Chemicals, Inc.
487 Division Street
Boonton, New Jersey 07005
(201) 335-2828

# POLYCRACKER
## The only prep wash you'll ever need.