BEECH–NUT, INC., Plaintiff,

v.

WARNER–LAMBERT COMPANY,
Defendant.

No. 72 Civ. 3169.

United States District Court,
S. D. New York.

Aug. 9, 1972.

Watson, Leavenworth, Kelton & Taggart, New York City, for plaintiff; Leslie D. Taggart, Harry O. Ansorge, Albert Robin, Frank J. Colucci, New York City, of counsel.

Pennie, Edmonds, Morton, Taylor & Adams, New York City, for defendant; Stanton T. Lawrence, Jr., James G. Foley, Philip T. Shannon, George F. Long, III, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

■ This struggle between corporate titans, represented by suitably eminent counsel, is concerned with cylindrical packages of confections referred to generically by both sides as "breath mints." The suit is for trademark infringement and unfair competition. Begun in state court, it came here upon defendant's removal petition. Plaintiff then brought the motion now before the court for (a) remand or, alternatively, (b) a preliminary injunction. The application for remand, if not quite abandoned, is no longer pressed with vigor. In any event, the court agrees with defendant that the case could have been commenced here under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and see 15 U.S.C. § 1121; 28 U.S.C. § 1338(b), so that the removal was not improper. We turn, then, to the application for a preliminary injunction.

As stated in an affidavit supporting its motion:

"Plaintiff's Confections Division manufactures and sells high impulse and relatively low price candies, mints, cough drops and gums. Among these products are LIFE SAVERS roll candies and mints and BEECH–NUT chewing gums."[1]

In 1970, as the same affidavit says, plaintiff's creative people "conceived" of a "new" product, assigning it a code name. The innovation was to be a line of "breath mints to compete in a growing market of mint products with active breath freshening ingredients."[2] At that time, plaintiff asserts, the "breath mint market"[3] was overwhelmingly (98%) dominated by defendant's CERTS and CLORETS. (Defendant, on the other hand, has raised a plausible question whether "breath mints" comprise so sharply separable a market, arguing that plaintiff's LIFE SAVERS, sold for a long time in huge quantities, are really a species of "breath mints." In the view the court takes on the present motion, it is unnecessary to reach a final position on this subordinate subject.)

Breath mints, like LIFE SAVERS and a host of similar confections, are sold off display racks from which purchasers commonly make visual and manual selections, the transaction generally requiring no oral exchanges. Accordingly, plaintiff urges, "the package design is as important as the trademark in enabling the purchaser to distinguish among the various competitive products."[4]

Marshalling its scientific and marketing resources, plaintiff proceeded in 1970 and 1971 to test names and evolve packaging for its breath mints. These efforts culminated in a product named BREATH SAVERS with a package design and legend upon which the court gazes as this is written. Test-marketing was conducted last summer. Large investments were made in television and other advertisements beginning in the autumn of 1971. Free samples were distributed in April and May of this year. Sales, though still confined to a nine-state market area, have approached or exceeded the $500,000 mark.

Following rumors in May of this year, plaintiff confirmed early last month that defendant was shipping or about to ship a new breath mint called BREATH PLEASERS. The packaging of defend-

1. Affidavit of William M. Morris, sworn July 20, 1972, ¶ 6.

2. *Id.* ¶ 8.

3. *Id.*

4. *Id.* ¶ 9.

ant's product uses the same colors, though different tones, for the same flavors: greens for wintergreen and spearmint, blue for peppermint. Plaintiff's package features a prominent design in the form of a geometric "snowflake." Defendant's has little spots representing "stars." Plaintiff's display box subtitles its contents as "THE BREATH MINT FROM LIFE SAVERS" (the last two words being enlarged and designed for special prominence). Defendant's box features the instructive legend "FORMULA KG40." Plaintiff says no similar thing on the box, but its individual package, in letters smaller than the average impulse buyer will notice, says a comparably illuminating thing: "Activated with MH2." Plaintiff also uses "MH2" in advertising and promotional material; the impact of this upon the impulse buyer at the rack is not readily measurable, and plaintiff offers no special enlightenment on the subject.

The upshot is stated by plaintiff's main affiant in this way:

"In view of the overall similarity between defendant's BREATH PLEASERS breath mints and plaintiff's BREATH SAVERS breath mints, I have no doubt that defendant intends its BREATH PLEASERS breath mints to confuse and deceive the trade and the public and to prevent plaintiff's national distribution of its BREATH SAVERS breath mints by destroying their clear-cut identity."

Somewhat more technically, as has been stated, plaintiff charges trademark infringement and unfair competition.

■ The infringement claim is not, in the court's view, a powerful one. The generic name of the product, on plaintiff's submissions, is "breath mints." Nobody claims a proprietary interest in the word "breath." "BREATH SAVERS" may not be descriptive (of course, it is not), but it marks at best a narrow area of protection, deliberately tied by plaintiff close to a special domain of its own. As the poets of Madison Avenue have drawn inspiration from things related to "breath," they have left a variety of marks less than utterly unique. Marks registered for candies or tablets (including cylindrically wrapped discs like those in suit now to be found on the market) number such entries as "Breath Sweet," "Breath Allure," "Chlorophyll Breath Mints," "Savors Sugarless Breath Candies," "Purify Breath Mints," "Breath Buds," "Breathlets," "Breath Takers," "Breath Beads," and "Breath-gards." In a well-trodden field like this, especially where the key word is free as air, small variations are likely to make enough of a difference to ward off charges of infringement. See, e. g., Parfumerie Roger & Gallet v. M.C.M. Co., 24 F.2d 698 (2nd Cir. 1928); American Chicle Co. v. Topps Chewing Gum, Inc., 112 F.Supp. 848 (E.D.N.Y. 1953), affirmed, 210 F.2d 680 (2nd Cir. 1954).

Furthermore, plaintiff has taken pains, probably effective, to assign a unique and recognizable quality to the joinder of the word "SAVERS" with "BREATH." As the display box proclaims, the product's source is the same as that of the famous "LIFE SAVERS." As was stressed at oral argument, this effort to promote recognition and identification is reinforced by patterning the BREATH SAVERS package along lines close to those of LIFE SAVERS. The likely success of these deliberate measures tends to guard against the confusion plaintiff urges as probable. The court finds a substantial prospect that plaintiff will eventually fail rather than succeed in its claim of trademark infringement.

This leaves still, as plaintiff points out, the overall question of likelihood of confusion, and the similarity of names of the two products may not be ignored in resolving this problem. Again, however, taking everything together, the court concludes that plaintiff will probably lose the case at the end and should not have at this stage the extraordinary remedy it seeks.

**550**

It remains relevant that we are in a field where similarities among competing products are rife. Thus, colors are, as defendant says, almost as functional as words for symbolizing confections of the kind in question. See Life Savers Corp. v. Curtiss Candy Co., 182 F.2d 4, 7 (7th Cir. 1950). Greens for wintergreen and spearmint are considerably used for gums (of both parties before us, among others) as well as mints. Likewise for peppermint and blue. In such an area of exiguous creativity, defendant's use of different shades makes at least a legally noticeable difference. Other distinctions add to a substantial defense. The lettering on display box and package is different; the artistic design differs; the coloring differs enough so that the overall visual impact is quite clearly distinguishable. The use of scientific-sounding numbers and letters to describe ingredients is a dispiritingly common device in a species of communication that does not have as a paramount aim the imparting of useful information. It may be true, as plaintiff urges, that the final test is not to be that of the judge sitting here, squinting minutely at the side-by-side packages, writing down similarities and differences on yellow pads. But the analysis must at least begin in these terms before arriving at the somewhat indeterminate task of ultimate judgment.

Proceeding to that task, the court concludes that plaintiff has not shown a sufficient or meaningful likelihood of confusion. As plaintiff itself urges, the field is not one involving deliberative, subtly discriminating purchases. The buyer on impulse may well grab one or another of these "breath mints" without noticing much of anything. But that is among the hazards of this line of commerce. Cf. Parfumerie Roger & Gallet v. M.C.M. Co., 24 F.2d 698, 699 (2d Cir. 1928). Insofar as buyers proceed to make distinctions, liminally or otherwise, there is enough to separate and differentiate the products before us—enough in the court's view to preclude the granting of a preliminary injunction.

Plaintiff's motion to remand and for a preliminary injunction is in all respects denied. So ordered.