**BEECH–NUT, INC., Plaintiff-Appellant,**

v.

**WARNER–LAMBERT COMPANY, Defendant-Appellee.**

**No. 356, Docket 72–1940.**

United States Court of Appeals, Second Circuit.

Argued Jan. 22, 1973.

Decided June 19, 1973.

802

Leslie D. Taggart, New York City (Albert Robin, Frank J. Colucci, Watson, Leavenworth, Kelton & Taggart, Alfred J. Hedal, Harry O. Ansorge, New York City), for plaintiff-appellant.

Stanton T. Lawrence, Jr., New York City (James G. Foley, Philip T. Shannon, George F. Long, III, Pennie, Edmonds, Morton, Taylor & Adams, New York City), for defendant-appellee.

Before MOORE, HAYS and OAKES, Circuit Judges.

MOORE, Circuit Judge:

This case involves a "struggle between corporate titans,"[1] in their efforts to create and market cylindrically packaged confections having as their purpose the purification of breath. Breath, quite an essential element to human existence, has with the advent of the advertising profession, received notoriety (as might be expected) by having the unfortunate consequences of "bad" breath presented to the public in an *in terrorem* way. These titans, from motives possibly altruistic, but more probably financial, have sought to alleviate this unfortunate bodily affliction by manufacturing a product which will change breath from "bad" to "good". The evils of bad breath have been dramatized to us as causing potential young lovers to find each other quite unacceptable until, by the use and alchemy of breath fresheners, the evil is cured and a happy courtship is commenced or renewed. All this is accomplished by dentifrices which "cleanse the breath while cleaning the teeth", mouth sprays which achieve the same result, and candy confections.

The defendant-appellee, Warner-Lambert Company (defendant), for some time has sold cylindrically packaged breath mints known as "Clorets" and "Certs". Beech-Nut, Inc., plaintiff-appellant (plaintiff), sells the well-known cylindrically packaged confection "Life Savers". If "Life Savers" is excluded as a possible breath mint, defendant with its "Clorets" and "Certs" is said to account for over 98% of the breath mint market.

Believing that such a seeming monopoly should be corrected, plaintiff decided to enter the breath mint market and, also, to capitalize on its "Life Savers" popularity by adding some breath freshening ingredients to a confection labeled "BREATH SAVERS". This product was in the high-impulse-low-price category and was to be sold from display racks usually found on counters of the vendors. Three geographically different market areas, covering nine states, were selected for test marketing, and large sums of money (estimated at over $1,000,000) were expended by plaintiff on development, packaging, and promotion of its "BREATH SAVERS". The results were good and plaintiff plans to proceed to market this product on a national basis.

1. 346 F.Supp. 547, 548 (S.D.N.Y.1972).

Seeing its field about to be invaded, defendant was not slow in its counter-attack. It brought forth, in a very short time, its own breath mint product which it labeled "BREATH PLEASERS". Naturally, the invaded plaintiff took umbrage at the counter-sally, and commenced legal action. The suit, for trademark infringement and unfair competition, originated in Supreme Court, New York County, and a preliminary injunction was sought against defendant's potential marketing of its "BREATH PLEASERS". Before there was any hearing in Supreme Court, New York County, the suit was removed by defendant to Federal district court. There the suit came before the trial court upon plaintiff's motions to remand to the State court and for a preliminary injunction. The court denied both motions. Plaintiff appeals to this Court from the order denying these motions, reported at 346 F.Supp. 547 (S.D.N.Y. 1972).

■ Although the trial court optimistically believed that the remand motion "If not quite abandoned, is no longer pressed with vigor",[2] this phase of the action has gathered renewed strength on appeal: well over one-half of plaintiff's brief on appeal is devoted to the district court's failure to remand.

Despite considerable doubt created by the language of the statute as to whether Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) covers mere trademark infringement and unfair competition, the many cases decided since its enactment leave no doubt that, as construed by the courts, the claims advanced here may properly be brought under this section.[3] Therefore, the claims set forth in the complaint could have been brought under Section 43(a)—hence, "removal was not improper."[4]

■ As to the denial of a preliminary injunction, we have previously stated that

[t]he award of a preliminary injunction is an extraordinary remedy, and will not be granted except upon a clear showing of probable success and possible irreparable injury. Clairol, Inc. v. The Gillette Co., 389 F.2d 264, 265 (2d Cir. 1968).

The district court found that there was

a substantial prospect that plaintiff will eventually fail rather than succeed in its claim of trademark infringement. 346 F.Supp. at 549.

In addition the court noted:

[T]aking everything together, the court concludes that plaintiff will probably lose the case at the end and should not have at this stage the extraordinary remedy it seeks. *Id.*

To determine whether Judge Frankel erred in this determination, we turn briefly to the merits of plaintiff's case. The essential and primary element in any action based upon common law infringement, unfair competition, or violation of the Lanham Act is deception. Plaintiff bases its claim of deception primarily upon imitation of packaging. The names themselves "BREATH SAVERS" and "BREATH PLEASERS" are quite dissimilar except for "Breath", as to which plaintiff possesses no exclusive rights. In the field of "breath fresheners", there are already many candies or mints which claim to obtain this praiseworthy objective under such titles as "Breath Sweet", "Breath Allure", "Chlorophyll Breath Mints", "Breath Buds", "Breathlets", "Breath Takers", "Breath Beads" and "Breathgards". Nor is the fact that the competing "Breath Savers" and "Breath Pleasers" are both wrapped in cylindrical packages, determinative—so are many candies.

2. *Id.*

3. *See* Federal-Mogul-Bower Bearings, Inc. v. Azoff, 313 F.2d 405 (6th Cir. 1963); Sutton Cosmetics (P.R.) Inc. v. Lander Co., 455 F.2d 285 (2d Cir. 1972); 28 U.S.C. § 1338.

4. 346 F.Supp. at 548.

The colors of the three flavors are quite similar, but there can be no monopoly on color.

In testing for likelihood of confusion in the impulse-purchaser market, a court must disregard minutia of differences and look to the overall appearance of the package as seen by a potential purchaser. Joseph Schlitz Brewing Co. v. Houston Ice & Brewing Co., 250 U.S. 28, 39 S.Ct. 401, 63 L.Ed. 822 (1919). Such a purchaser in all probability will not discuss before purchase the merits of the product with the sales clerk and inquire whether the mint with "MH2" will be more efficacious in solving his temporary problem than the mint produced under "Formula KG40". He wants to eliminate bad breath as quickly as possible. On the counter he sees packages in display racks bearing the name "BREATH SAVERS" in large white letters against a blue or green background. Only upon close inspection will he see in small type the legend, "The Breath Mint From Life Savers". However, once he knows the source, he will naturally associate this breath mint with the well-known "Life Savers". And if he finds the product pleasant and effective, he may become a regular customer. "BREATH PLEASERS" on the other hand will catch the potential purchaser's eye with its large yellow lettering, also against a blue or green background. Even were defendant's name known to the purchaser through the purchaser's knowledge of defendant's various pharmaceutical products, he would not know that the Warner-Lambert Company was the manufacturer of "BREATH PLEASERS" because its name does not appear on the package as displayed; nor is the buyer reminded that "BREATH PLEASERS" come from the same manufacturer as "Certs" or "Clorets".

In short, we agree with Judge Frankel that the two products' names and packages are sufficiently different so that a purchaser desirous of obtaining a product manufactured by "Life Savers" would not be deceived into believing that the "Life Savers" company was the source of "BREATH PLEASERS". The product "BREATH PLEASERS" is in competition with "BREATH SAVERS", but not in that type of unfair competition which would warrant the granting of a preliminary injunction; if there is unfair competition here, plaintiff will have a full opportunity to develop this at trial.

The order of the District Court is affirmed.